**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL ACTION NO. 20-99-DLB**

**BARBARA ANN HOWARD**                                        **PLAINTIFF**

**v.**                 **MEMORANDUM OPINION AND ORDER**

**KILOLO KIJAKAZI, Commissioner
of the Social Security Administration**                           **DEFENDANT**

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

This matter is before the Court on Plaintiff Barbara Ann Howard's Motion for Summary Judgment, (Doc. # 14), pursuant to 42 U.S.C. § 405(g), which allows Plaintiff to obtain judicial review of an administrative decision by the Commissioner of Social Security. Defendant Andrew Saul, then acting Commissioner of the Social Security Administration ("SSA"), filed a Cross Motion for Summary Judgment. (Doc. # 16). The Court, having reviewed the administrative record and the parties' motions, and for the reasons set forth herein, **affirms** the Commissioner's decision.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On January 30, 2015, Barbara Howard filed her first application for Disability Insurance Benefits under Title II of the Social Security Act alleging disability as of October 27, 2014. (Tr. 16). This claim was denied at the initial level and upon reconsideration. (*Id.*). Howard appealed and testified before Administrative Law Judge ("ALJ") Anthony Johnson, Jr., who denied Howard's appeal on June 29, 2017, ("2017 decision"). (Tr. 132)

1

Then, on March 26, 2018, Barbara Howard filed her second application for Disability Insurance Benefits, again alleging disability as of October 27, 2014. (Tr. 216). Howard was forty-six years old at the onset of the alleged disability that rendered her unable to work. (*Id.*). Howard's application was denied initially on June 15, 2018, (Tr. 96), and upon reconsideration on August 1, 2018, (Tr. 115). At Howard's request, (Tr. 155-156), an administrative hearing was conducted, (Tr. 57-76), and on October 7, 2019, ALJ Maria Hodges found that Howard was not disabled under the Social Security Act and thus not entitled to benefits. (Tr. 13-31). The decision became final on June 22, 2020, when the Appeals Council denied Howard's request for review, ("2020 decision").[1] (Tr. 1-7).

## II. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing

---

[1] Even though ALJ Hodges' decision was dated October 7, 2019, it will be referred to as the 2020 decision as that is when it became final upon the Appeals Council's denial of Howard's request for review. (Tr. 1).

*Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).  Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side.  *Id.*; *see also Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).  In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole."  *Cutlip*, 25 F.3d at 286.

**B.     The ALJ's Determination**

To determine disability, an ALJ conducts a five-step analysis.  *Walters*, 127 F.3d at 529.  Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform.  *See id.* (citing 20 C.F.R. § 404.1520).  The burden of proof rests with the claimant for Steps One through Four.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity."  *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, ALJ Hodges found that Howard had not engaged in substantial gainful activity since June 30, 2017, the first date under adjudication. (Tr. 19). At Step Two, ALJ Hodges determined that Howard had the following severe impairments: degenerative disc disease, fibromyalgia, pain syndrome, major depressive disorder, and anxiety disorder. (*Id.*). At Step Three, ALJ Hodges determined that Howard did not have any impairment or combination of impairments that meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*).

ALJ Hodges then determined that Howard possessed the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b), with the following modifications and limitations:

> [The claimant] can frequently balance and climb ramps and stairs, but never climb ladders, ropes or scaffolds. The claimant can occasionally stoop, kneel, crouch, crawl, and frequently reach overhead with the left extremity. The claimant should avoid concentrated exposure to extreme cold, vibration, and hazards of moving machinery and unprotected heights. The claimant needs low stress work, defined as no fast-paced work or strict production quotas.

(Tr. 21). ALJ Hodges concluded at Step Four that Howard was unable to perform any past relevant work, such as that of a kitchen supervisor, telemarketer, cashier, and manager. (Tr. 26).

At Step Five, ALJ Hodges concluded that due to Howard's age, education, work experience, and RFC, there are a significant number of jobs in the national economy that she can perform. (*Id.*). Based on the opinion of a Vocational Expert ("VE"), ALJ Hodges determined that Howard could perform several occupations, such as routing clerk, product inspector, and price marker, despite her limitations. (Tr. 26-27). Accordingly, ALJ Hodges concluded that Plaintiff was not disabled as defined by the Social Security Act at any time from June 30, 2017, through the date of the decision. (Tr. 27).

4

**C.     Analysis**

In her Motion for Summary Judgment, Howard argues that the 2020 decision was not supported by substantial evidence because (1) ALJ Hodges erred by providing a less restrictive RFC than was previously found, despite concluding that Howard's conditions worsened since the prior decision; and (2) ALJ Hodges provided an RFC that did not adequately describe Howard's limitations and therefore rendered the VE's testimony faulty.  (Doc. # 14-1 at 1).

*1.     Substantial Evidence and the Determination of Howard's RFC*

RFC refers to "the most [the claimant] can do despite [her] limitations" and should be assessed "based on all the relevant evidence in [the] case record."  20 C.F.R. § 404.1545(a)(1).  Determining a claimant's RFC begins with an assessment of her "impairment(s), and any related symptoms, such as pain, [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting."  *Id.*  This includes an evaluation of "statements about what [the claimant] can still do that have been provided by medical sources," as well as statements by the claimant or other persons which describe the claimant's "limitations from [her] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain."  20 C.F.R. § 404.1545(a)(3).  So long as an ALJ's determination of disability is supported by substantial evidence in the record, the Court will affirm.  *Her*, 203 F.3d at 389-90 (citing *Key*, 109 F.3d at 273).

Plaintiff argues that ALJ Hodges erred by providing a less restrictive RFC than was previously found despite concluding that Howard's conditions worsened since the previous ALJ's decision.  (Doc. # 14-1 at 2).  Plaintiff contends that, based on *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), it was inappropriate for

ALJ Hodges to make a new RFC finding in the 2020 decision because the previous RFC was a final decision and thus binding. (*Id.*).

Howard notes that in the 2017 decision, she was found to have the following severe impairments: degenerative disc disease of the lumbar spine, sacroiliitis, degenerative disc disease of the cervical spine, and myofascial pain syndrome. (*Id.*); (Tr. 123). In the 2020 decision, Howard was found to have degenerative disc disease, fibromyalgia, pain syndrome, major depressive disorder and anxiety disorder. (Tr. 19). Because Howard has severe psychological impairments, which were not present at the time of the 2017 decision, coupled with worsening physical maladies, she argues the less restrictive RFC in the 2020 decision is error requiring remand. (Doc. # 14-1 at 3). Howard further argues this is not harmless error because it is impermissible pursuant to *Drummond*. (*Id.*). The Court disagrees.

First, ALJ Hodges articulated that generally, once a decision on a disability claim has become final, such as the 2017 decision, administrative res judicata applies to the claim if the same parties, facts, and issues are involved. (Tr. 16). This aligns with the holding in *Drummond*. 126 F.3d at 841 ("The doctrine of res judicata has been commonly applied in social security cases . . . ."). But, if the "subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata." (Tr. 16-17). ALJ Hodges noted that "this decision will consider the period from June 30, 2017 forward," which is the period after the 2017 decision became final. Thus, the 2020 decision considers a period of time not adjudicated

in the previous 2017 decision. Even further, ALJ Hodges explained that within the Sixth Circuit, when a prior final decision contains a finding of a claimant's RFC, as was the case in the 2017 decision, then the "SSA may not make a different finding *unless new and material evidence* or changed circumstances provide a basis for a different finding." (Tr. 17) (emphasis added). Again, this aligns with *Drummond*, which articulated that when "the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination *absent changed circumstances*." 126 F.3d at 842 (emphasis added). Additionally, the Sixth Circuit has articulated, that the principles articulated in *Drummond* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings," as was noted by ALJ Hodges. (Tr. 17); *see also Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018).

Even absent new and additional evidence, ALJ Hodges was merely required to consider, and was not bound by, the prior ALJ's findings because this was a new application. *Earley*, 893 F.3d at 933 (noting that "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application."). ALJ Hodges made clear that "the residual functional capacity assessed herein has been crafted after considering all *new* and *material evidence*, as well as the prior Administrative Law Judge decision and the claimant's *changed* circumstances." (Tr. 17) (emphasis added). Thus, ALJ Hodges' decision to evaluate and provide an RFC was

7

not incongruent with principles of res judicata established in *Drummond* as Plaintiff argues in her Motion for Summary Judgment. (Doc. # 14-1 at 4).

Next, Howard discusses the differences between the RFC from the 2017 decision and the 2020 decision. Howard focuses on one sentence of the 2020 RFC to argue it is less restrictive than the one included in the 2017 decision. The 2017 decision RFC stated:

> [a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can **occasionally climb ramps or stairs**, stoop, kneel, crouch, and crawl. She cannot climb ladders, ropes, or scaffolds.

(Tr. 127) (emphasis added). Howard contrasts this with the 2020 RFC which states Howard "can *frequently* balance and *climb ramps and stairs*, but never climb ladders, ropes, or scaffolds." (Doc. # 14-1 at 3); *supra* Section II.B (emphasis added). The key difference is that the 2017 decision found Howard could *occasionally* climb ramps or stairs while the 2020 decision found she could *frequently* do so. Howard argues that the disparity between the two is inconsistent with ALJ Hodges' additional finding that Howard's condition had worsened over time. (Doc. # 14-1 at 4).

However, ALJ Hodges also found a number of additional limitations, which she included in the RFC, and which were not in the 2017 decision. As fully provided in Section II.B, the 2020 decision's RFC stated:

> "[t]he claimant can occasionally stoop, kneel, crouch, crawl, and frequently reach overhead with the left extremity. The claimant should avoid concentrated exposure to extreme cold, vibration, and hazards of moving machinery and unprotected heights. The claimant needs low stress work, defined as no fast-paced work or strict production quotas."

(Tr. 21). The 2017 decision's RFC only provided for Howard's ability to occasionally stoop, kneel, crouch, and crawl. (Tr. 127). In the 2020 decision, ALJ Hodges' added

8

limitations that Howard should avoid extreme cold, vibrations, moving machinery and unprotected heights; she also added that Howard should work in a low stress environment. The several, additional limitations suggest that the 2020 decision's RFC is in fact *more* restrictive than the 2017 decision.

Importantly, both RFCs found that Howard could perform "light work." *Compare* (Tr. 21) *with* (Tr. 127). The central issue in *Drummond* was a subsequent ALJ's RFC finding that found the claimant could perform "medium" level work instead of "sedentary work" as found by the 2017 decision's RFC even though nothing had changed between the two reviews. 126 F.3d at 839; *Amburgey v. Comm'r of Soc. Sec.*, 751 F. App'x 851, 861 (6th Cir. 2018) (noting "the problem in *Drummond* was that '[n]othing had changed between the end of the first application and beginning of the second one—other than the advancement of one year in the applicant's age.'" (quoting *Earley*, 893 F.3d at 932) (alteration in original)).

Here, even though ALJ Hodges found that Howard can frequently climb ramps and stairs, she did not change Howard's work level. (Tr. 21). ALJ Hodges simply relied upon the new medical evidence presented, specifically, physicians Dr. William Fernandez and Dr. Timothy Gregg's reports in which both concluded that Howard could frequently climb ramps and stairs. (Tr. 91-92, 111). In addition, the Commissioner correctly points out that none of the three representative jobs that ALJ Hodges found Howard could perform at Step Five required any climbing whatsoever. (Doc. # 16 at 8). The occupations of routing clerk, product inspector, and price marker all list climbing as not present or non-existent. *See Dictionary of Occupational Titles*, 222.687-022 Routing Clerk, 1991 WL 672133; 724.685-014 Weld Inspector, 1991 WL 724.685-014; 209.587-034 Marker, 1991

9

WL 671802. ALJ Hodges' reliance on the medical opinion of two state agency physicians is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citing *Kirk*, 667 F.2d at 535).

ALJ Hodges' decision to follow the medical opinions of two physicians by including the ability to frequently climb stairs and ramps in Howard's RFC is therefore not reversible error.

### 2. ALJ Hodges' RFC & Vocational Expert's Testimony

Plaintiff's second contention is that the 2020 decision's RFC failed to adequately describe Howard so the VE's testimony cannot be substantial evidence on which ALJ Hodges could have relied and further that RFC failed to account for Howard's medication side-effects. (Doc. # 14-1 at 4).

Plaintiff correctly notes that an ALJ must consider all relevant impairments, including those that are non-severe, in formulating an RFC. 20 C.F.R. § 404.1529. However, ALJ Hodges clearly stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 21). Plaintiff argues that ALJ Hodges failed to account for or discuss impairments affecting the use of Howard's upper extremities for handling, fingering, and feeling. (Doc. # 14-1 at 5). In Plaintiff's view, this failure coupled with the less-restrictive RFC, invalidates the VE's testimony regarding the availability of jobs because it was based on the inadequate RFC. (*Id.*). Specifically, Howard asserts that ALJ Hodges failed to accommodate impairments affecting the use of both hands in the RFC, even though Howard provided forms prior to the hearing and testimony during the hearing indicating those impairments. (*Id.* at 6). Yet, ALJ Hodges clearly stated that

10

"claimant alleged that she has pain . . . numbness, tingling and weakness in her hands and arms" in her decision. (Tr. 22). Moreover, ALJ Hodges cited to the Function Report provided in reasoning that Howard's functional limitations are not as severe as alleged. (Doc. #14-1 at 6); (Tr. 22-23). While Howard argues that ALJ Hodges noted Howard's alleged weakness in her hands and arms, Howard points to no other evidence to establish weakness in her arms. (Doc. # 14-1 at 6). ALJ Hodges found that records show Howard had pain in her left and right elbows but that a medical exam showed a normal left elbow while the right had mild soft tissue. (Tr. 23). Further, Howard received treatment for her elbow that was at least partially effective in alleviating her symptoms. (*Id.*).

Plaintiff's issue is not that ALJ Hodges failed to consider the evidence, but rather that ALJ Hodges did not believe Howard's evidence, which this Court will not review. *See Cutlip*, 25 F.3d at 286 (citing *Brainard*, 889 F.2d at 681; *Garner*, 745 F.2d at 387) (noting that courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations in these cases). Accordingly, ALJ Hodges did not err in making her determination.

### 3.   *ALJ Hodges' RFC & Howard's Medication Side-Effects*

Howard's final point is that the 2020 decision's RFC failed to account for the side-effects she experienced from medication. (Doc. # 14-1 at 7). However, ALJ Hodges also addressed that issue in her decision; ALJ Hodges specifically included that "[t]he claimant stated [that] she experiences side-effects from her medications including dizziness, radiating pain down her legs, and shaking." (Tr. 22). On the same page, ALJ Hodges noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other

11

evidence in the record for the reasons explained in this decision." (*Id.*). However, Howard argues that there is no discussion of how the side-effects are accommodated by the RFC. (Doc. # 14-1 at 7). However, Howard fails to demonstrate how these medication side-effects interfere with her ability to work beyond the limitations set forth in the RFC. *See Combs v. Berryhill*, No. 6:17-cv-68, 2018 WL 934879, at *5 (E.D. Ky. Feb. 16, 2018) (rejecting plaintiff's argument that ALJ failed to address obesity in RFC when plaintiff had failed to "point to any limitation that obesity imposes beyond what is described in the RFC . . . ."). Likewise, Howard has only argued that there is a lack of discussion and inclusion of Howard's side-effects in the RFC without explaining how those side-effects impose any limitation beyond those already in the RFC. (Doc. # 14-1 at 7).

Even so, the Commissioner correctly points out that ALJ Hodges did consider Howard's side-effects by including limitations in the RFC regarding climbing ladders, ropes, and scaffolds; exposure to cold, vibrations, hazards such as moving machinery, and unprotected heights. (Doc. # 16 at 1); (Tr. 21). At a minimum, ALJ Hodges' added limitation of heights accounts for Howard's dizziness.

Lastly, Howard posits that the VE's testimony cannot constitute substantial evidence to serve as the basis for a finding of the availability of other work because ALJ Hodges failed to accurately portray Howard's physical and psychological impairments. (Doc. # 14-1 at 8) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)). On that same page, the Sixth Circuit notes that "while the RFC should focus on [the claimant's] abilities or, in other words, what [the claimant] can and cannot do, the hypothetical question should focus on [the claimant's] overall state including [the claimant's] mental and physical maladies," and that "we acknowledge that [the claimant's]

12

maladies should inform an assessment of her abilities, this does not mean that the RFC must *enumerate* them." *Howard*, 276 F.3d at 239 (emphasis added) (alterations added). In *Howard*, the ALJ's RFC found that the plaintiff could squat and climb but the report the ALJ relied on stated that it was harder for the plaintiff to squat and climb when her lower back pain was significant. *Id.* In considering this, the Sixth Circuit articulated that "this oversight, if it can be called that, is not so significant as to justify a finding that this part of the RFC is not supported by substantial evidence." *Id.* ALJ Hodges' findings are also supported by substantial evidence, even if they vary slightly from the previous ALJ's decision and medical opinions. Importantly, the 2020 decision's RFC was very similar to Doctors William Fernandez and Timothy Gregg's findings. (Tr. 91-96, 111-15). Because ALJ Hodges is not required to enumerate each of Howard's maladies and she has clearly stated that she has considered each impairment in making her decision, that is sufficient.

## III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 14) is hereby **DENIED**;

(3) The Commissioner's Motion for Summary Judgment (Doc. # 16) is hereby **GRANTED**;

(4) This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

13

This 16th day of February, 2022.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\SocialSecurity\MOOs\Pikeville\20-99 Howard MOO.docx